DECISION
Plaintiffs-appellants, Robert H. Roelle, Jr., and Deborah L. Roelle, appeal from a decision of the Franklin County Court of Common Pleas overruling their objections to a magistrate's decision entered in the Roelles' action against defendant-appellee, Orkin Exterminating Company, Inc. ("Orkin"). Orkin has cross-appealed from the trial court's decision.
The Roelles own and occupy a single family residence located at 5660 Sandalwood Boulevard in Columbus. They are the successors in title to Theodore and Linda Evec, from whom they purchased the property in 1993. In purchasing the home, the Roelles were assigned the Evec's rights under a Limited Lifetime Renewable Termite Retreatment Guarantee (the "Retreatment Guarantee") issued by Orkin to the Evecs, pursuant to an initial termite treatment of the property by Orkin in 1988.
The Evecs first observed swarming termites in 1988, and contracted with Orkin for a complete treatment of the house. After the initial treatment they paid an annual fee to maintain the Retreatment Guarantee in force. The Evecs subsequently observed renewed termite activity and called Orkin for retreatment of the home on six different occasions between 1991 and 1993. After the Roelles purchased the home they also paid annually to continue the Retreatment Guarantee, and were likewise faced with ongoing termite infestation. They called Orkin to the property twenty-four times from 1994 to 1999. These calls to Orkin yielded fourteen retreatments of the home after 1994. The termites nonetheless continued to infest and cause damage to the house. By the time of trial, despite application of a calculated eight hundred thirty-seven gallons of termiticide to the property, the termite problem had not been solved and structural damage to the home was extensive.
The Roelles filed a complaint seeking recovery for the termite damage on a number of different theories. The Roelles alleged that Orkin had breached its contract under the Retreatment Guarantee by failing to use necessary skill and diligence to eradicate the termites. The Roelles also alleged that the guarantee as issued by Orkin was illusory, and therefore constituted a deceptive and unconscionable practice entitling them to treble damages under the Ohio Consumer Sales Practices Act ("CSPA"). The Roelles alleged a further unconscionable act or practice in violation of the CSPA in that Orkin had engaged in a "pattern of inefficiency and incompetence" by failing to eradicate the termites. The Roelles also alleged breach of an implied warranty in the Retreatment Guarantee that the treatment would in practice be reasonably effective in eradicating the termite problem. Finally, the Roelles alleged that Orkin's failure to perform its contractual duty constituted gross negligence.
Prior to trial, the court overruled Orkin's motion for summary judgment and granted in part the Roelles' motion for summary judgment, finding that the Retreatment Guarantee as offered by Orkin was, in fact, a deceptive and unconscionable practice. The summary judgment decision did not set the proportion of damages subsequently awarded, if any, which would be subject to trebling under the CSPA, expressly reserving this issue for later determination.
The remaining issues then proceeded to a bench trial before a magistrate, who heard extensive testimony from both parties. The magistrate subsequently issued a decision finding for the Roelles on their breach of contract claim, but finding that their gross negligence and implied warranty claims were not meritorious. The magistrate did not address the Roelles' claim that Orkin's failure to eradicate the termite problem despite continued retreatments constituted a pattern of inefficiency and incompetence which further violated the CSPA. Based on breach of contract, the magistrate awarded the Roelles compensatory damages of $34,165.76. To this the magistrate added $589.21 representing amounts paid by the Roelles in annual renewals of the Retreatment Guarantee. The magistrate found, however, that only this latter amount directly flowed from Orkin's CSPA violation and was subject to trebling. The total damages awarded thus came to $35,933.39.
Both parties filed objections to the magistrate's decision, which were overruled in their entirety by the trial court. The matter then returned before the magistrate for a hearing on attorneys' fees awardable to the Roelles pursuant to the CSPA. After the hearing, the magistrate allowed $9,027.20 of the total $32,359.50 in fees requested. The Roelles filed new objections to the magistrate's decision on fees, which were again overruled by the trial court. The Roelles have timely appealed from the trial court's decisions, and bring the following assignments of error:
 I. THE TRIAL COURT ERRED IN ITS DETERMINATION OF THE AMOUNT OF DAMAGES TO WHICH PLAINTIFFS-APPELLANTS ARE ENTITLED BECAUSE OF DEFENDANT-APPELLEE'S VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT.
 II. THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD AS PART OF PLAINTIFFS-APPELLANTS' DAMAGES FOR DEFENDANT-APPELLEE'S BREACH OF CONTRACT PLAINTIFFS-APPELLANTS' CLAIM FOR REIMBURSEMENT FOR THEIR DIAGNOSTIC EXPENSES.
 III. THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT DEFENDANT-APPELLEE'S CONTINUED FAILURE TO CONTROL TERMITES AT PLAINTIFFS-APPELLANTS' RESIDENCE RESULTING IN DAMAGE TO THE PREMISES, WAS INEFFICIENT AND INCOMPETENT CONDUCT AMOUNTING TO A VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT.
 IV. THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT DEFENDANT-APPELLEE IMPLIEDLY WARRANTED THAT IT WOULD ERADICATE TERMITES AT PLAINTIFF-APPELLANTS' RESIDENCE.
 V. THE TRIAL COURT ERRED IN ITS DETERMINATION OF THE AMOUNT OF ATTORNEY FEES PLAINTIFFS-APPELLANTS ARE ENTITLED TO RECOVER FOR DEFENDANT-APPELLEE'S VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT.
Orkin has timely cross-appealed from the trial court's decisions and brings the following assignments of error:
 1. The trial court erred in entering judgment for plaintiffs/appellants/cross-appellees ("plaintiffs") and against defendant/appellee/cross-appellant Orkin Exterminating Company, Inc. ("Orkin") on the contract claim asserted by plaintiffs.
 2. Assuming for the sake of argument only Orkin were liable under the contract, the trial court erred in determining damages of $34,165.76 were proximately caused by the breach.
 3. The trial court erred by granting summary judgment on the issue of liability with respect to the claim of plaintiffs that Orkin issued a deceptive and unconscionable limited guarantee in violation of the Consumer Sales Practices Act.
 4. The trial court erred by denying the motions of Orkin for reconsideration and for summary judgment with respect to the claim of plaintiffs that Orkin issued a deceptive and unconscionable limited guarantee in violation of the Consumer Sales Practices Act.
 5. Assuming for the sake of argument only Orkin were liable under the Consumer Sales Practices Act, the trial court erred in determining treble damages of $1,767.63 should be awarded to plaintiffs because of the violation.
 6. Assuming for the sake of argument only Orkin were liable under the Consumer Sales Practices Act, the trial court erred in finding plaintiffs should be awarded attorney fees.
Because Orkin's first, third, and fourth assignments of error address the threshold issues of liability in this case, they will be addressed first. Orkin's first assignment of error asserts that the trial court erred in finding liability and awarding damages on the Roelles' breach of contract claim. We note ab initio that this issue, as with many others in this case, presents both mixed questions of law and fact. With respect to those areas where either party challenges the weight and credibility given to the evidence at trial by the magistrate, the parties in essence raise manifest weight arguments. When reviewing the trial court's decision on this basis, we are guided by the presumption that the factual findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279. We therefore address issues of factual nature on this limited basis, as opposed to the stricter scrutiny given to questions of law.
The contractual language at issue is found in the "Orkin Exterminating Co., Inc. Subterranean Termite Agreement," under which Orkin originally contracted with the Evecs to treat the home. This contract offers the consumer different options providing various levels of pest control services after the initial treatment. The parties agree that the most comprehensive form of coverage, the "Seven-Year Renewable Termite Repair Guarantee," under which Orkin undertakes not only to retreat the premises but repair any new termite damage after the initial treatment, did not apply to the Evec/Roelle residence. Orkin therefore offered the Evecs a "Retreatment Guarantee" providing only, upon payment of an annual renewal fee, for inspection and retreatment of the premises as necessary, and specifically excluding Orkin's liability for further structural damage to the home:
 LIMITED LIFETIME RENEWABLE TERMITE RETREATMENT GUARANTEE (GT)
 Orkin will issue me a Retreatment Guarantee which obligates ORKIN, subject to the limitations and restricts set forth in this Agreement and in the Inspection/Treating Report at no extra cost to me, to apply any necessary additional treatment to my structure if an infestation of Subterranean Termites is found during the effective period of Guarantee. I understand that ORKIN's obligation under this Guarantee is limited to retreatment only. I expressly release ORKIN from any obligations under this Guarantee to repair any damages to my structure or its contents caused by an infestation of Subterranean Termites. My Guarantee will remain effective for up to the lifetime of the treated premises provided that I pay the annual renewal payment on or before each anniversary date of this Agreement, and that I comply with the other applicable terms and conditions of this Agreement. * * * I understand that I may request and receive from ORKIN a replacement of the termite chemical barrier no more frequently than every seven years at ORKIN's then current price to treat my structure.
(Emphasis added.)
The language of Orkin's Retreatment Guarantee has been extensively litigated in state and federal courts across the nation, which reflects both the scope of Orkin's business and the sometimes intractable nature of termite infestations. The great majority of courts have addressed these cases as purely contractual disputes, and have found that Orkin's exclusion of liability for structural damages, and corresponding limitation of its obligations to simple retreatment, effectively bars recovery by homeowners for structural damage. See, e.g., Groth v. OrkinExterminating Co., Inc. (C.D.Ill. 1995), 909 F. Supp. 1150, 1152; Palmerv. Orkin Exterminating Co., Inc. (S.D.Miss. 1994), 871 F. Supp. 912;Harmon v. Orkin Exterminating Co., Inc. (W.D. VA. 1992), 794 F. Supp. 589;Johnson v. Orkin Exterminating Co., Inc. (E.D. LA. 1990), 746 F. Supp. 627;Orkin Exterminating Co., Inc. v. Walters (Ind. C.A.3, 1984), 466 N.E.2d 55. The only comparable authority so holding in Ohio, however, is an unpublished federal district court decision, Knorn v. Orkin ExterminatingCo., Inc. (S.D.Ohio Feb. 8, 2000), Case No. C2-98-919, slip opinion.
In addressing the language of a written contractual agreement, the primary objective of a court is to "ascertain and give effect to the intent of the parties." Foster Wheeler Enviresponse, Inc. v. FranklinCty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly Medical Life Ins. Co. v.Orkin Exterminating Co., Inc. (1987), 31 Ohio St.3d 130, 132. Where contracting parties make mutual promises which are integrated into an unambiguous written contract, duly signed, courts will give effect to the parties expressed intentions. Aultman Hosp. Assn. v. Community MutualIns. Co. (1989), 46 Ohio St.3d 51, 53. The crux of the contractual language we seek to interpret today is found in the above-highlighted phrase, "any necessary additional treatment," and consequently whether Orkin fulfilled this contractual obligation.
The Roelles primarily relied upon the testimony of their expert witness, George Keeney, an employee and doctoral candidate in the Entomology Department of The Ohio State University. Keeney's qualifications included a masters degree and completion of all course work towards his doctorate, as well as various published articles in his area of expertise. Keeney also relied on his prior experience as a technician with a pest control company in central Ohio, during the course of which he conducted numerous termite inspections and treatments. In conjunction with Keeney's testimony at trial, the Roelles submitted a video produced by the United States Forest Service portraying the characteristics of subterranean termites in Ohio.
Keeney testified that he inspected the Roelle house on several occasions, and as recently as the week of trial found live, active termites. Keeney described various means of combating subterranean termite infestations, the principal, traditional method being to create a "termiticide barrier" around and beneath the structure. This is accomplished by injecting termiticide into the soil around the outside walls, through holes drilled into the interior of the foundation block, and through holes drilled in below-grade floor slabs. The objective, Keeney testified, is to create an unbroken shell of termiticide-infused soil surrounding and beneath the foundation of the home. Since subterranean termites, under most conditions, will enter above-ground wooden structures solely for the purpose of feeding and are dependent upon access to the below-ground colony for life-sustaining moisture and temperature control, the termiticide barrier surrounding the structure prevents both new termites from reaching the home and termites already in the structure from surviving.
Keeney also described a more recently introduced method of termite control involving the use of "termite bait," in which pieces of wood treated with specific types of slower-acting termiticide are buried at intervals around the compromised structure. When foraging termites encounter the treated wood, as part of the normal feeding process for the colony they take treated wood in digested form back to the colony. The hoped-for effect is to eliminate the principal reproductives (the "king and queen") and supplementary reproductives, and thus eliminate some or all of the termite colony itself, rather than merely preventing it from reaching the structure.
Keeney's conclusion was that the vicinity of the Roelle residence contained a mature colony of termites which had been able to consistently and repeatedly breach the termiticide barrier through untreated gaps. Keeney opined that Orkin's termiticide treatment around the home's fireplace, interior foundation walls, and stairwell was inadequate, and that termiticide, although applied in more than sufficient quantity, was not reaching necessary areas. He also identified areas where the holes drilled in floor slabs to permit infusion of termiticide were spaced too far apart (sixteen to nineteen inch centers, rather than twelve inch centers), and that certain areas had not been drilled at all. Keeney further testified that in all probability a "satellite colony" had been established in an upstairs bath and caused much damage, a possibility which Orkin had apparently rejected when suggested by the Roelles. Keeney discounted Orkin's claim that pre-existing moisture had caused the damage attributed to the satellite colony in the bathroom area, and he testified that termites will bring their own moisture to an area under such conditions. While Keeney generally agreed with Orkin's contention that certain characteristics of the home, including a below-grade finished family room, stucco extending below ground level, and a dirt-filled porch, rendered treatment difficult, these were not insoluble problems. Keeney described various techniques for treating dirt-filled porches and below grade-slabs over vapor barriers which would have increased the potential effectiveness of treatment.
Although Orkin argues that its conduct satisfied its contractual obligations, clearly, Orkin's duty under the contract is not limited to serial re-applications of termiticide, however great the quantity, in a manner which has been previously proved to be ineffective. The magistrate's factual findings, which are not contested by Orkin, were that Orkin visited the Roelle residence twenty-four times between 1994 and 1999, re-treated the property fourteen times, and applied a staggering eight hundred thirty-seven gallons of termiticide, without solving the problem. Although the term "necessary retreatment" is not defined in the contract, it clearly should not be defined as "perfunctory and vain continuation of an ineffective course of conduct," but rather invokes an obligation on the part of Orkin to use its best efforts to perform the work in a manner compatible with industry standards, and explore alternative methods of retreatment when initial efforts had failed. There was certainly competent, credible evidence to support the magistrate's conclusion that Orkin had not done so in the present case. We therefore find that there is ample, credible evidence to support the magistrate's finding that Orkin was in breach of its Retreatment Guarantee with the Roelles, and the trial court did not err in overruling Orkin's objections on this basis. Orkin's first assignment of error is accordingly overruled.
We are careful to add, however, that our finding of a breach of contract on these facts is conditioned upon the totality of the circumstances, which appear to be rather extraordinary and unusual in the pest control industry. The Roelles' expert witness, Mr. Keeney, testified that he "had never seen termites persist so long" in a structure after multiple treatments. On the other hand, testimony by both Keeney and Orkin's branch manager established that reinfestations, either through breakdown of the termiticide barrier or gaps in the initial application, are far from unheard of, and it would thus clearly be inappropriate to interpret our present decision as finding liability on the part of any pest control applicator who failed to eradicate termites on the first attempt.
Turning to Orkin's third and fourth assignments of error, we address Orkin's contention that, even if a breach of contract is found, the Retreatment Guarantee by its own terms expressly limited Orkin's liability to mere retreatment, and released Orkin from any liability to repair structural damage caused by a re-infestation of subterranean termites. The Roelles' assert, and the trial court found, that the "retreatment only" language in the Retreatment Guarantee was deceptive and unconscionable, constituting violation of the CSPA, and accordingly should be given no effect, thus permitting recovery by the Roelles for structural damage proximately caused by Orkin's breach of contract.
The purpose of the CSPA is to protect consumers from the harm of deceptive or unconscionable sales practices. Pasco v. State Auto Mut.Ins. Co. (Dec. 21, 1999), Franklin App. No. 99AP-430, unreported; Cryev. Smolak (1996), 110 Ohio App.3d 504; Fletcher v. Don Foss ofCleveland, Inc. (1993), 90 Ohio App.3d 82 . The statute thus gives protection to consumers from "unscrupulous suppliers" in a more expedient and affordable manner than previously available in a tort or contract action under the common law. State ex rel. Celebrezze v. Howard (1991),77 Ohio App.3d 387, 393. The act reflects legislative concern that, as marketing and consumer services become more complex and sophisticated, they increasingly exceed the capacity of consumers to make informed choices in the face of deceptive practices by a sophisticated seller operating in his field of expertise. Elder v. Fischer (1998),129 Ohio App.3d 209, 214. The act has a remedial purpose and must be liberally construed in favor of consumers. Einhorn v. Ford Motor Co.
(1990), 48 Ohio St.3d 27, 29. The act applies to sales of services as well as goods. R.C. 1345.01(A). The first section at issue here, R.C.1345.02(A) provides generally, "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1234.02(B) enumerates, without limitation thereto, various specific acts and practices which can be characterized as deceptive, including R.C. 1345.02(B)(10), relied upon by the Roelles:
 That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.
In applying R.C. 1345.02(B)(10), an Ohio appellate court has specifically held that a pest control retreatment warranty similar to the one in the present case was inherently deceptive, because although the agreement styled itself a "guarantee," any assurance or warranty of value to the consumer was entirely negated by the subsequent exclusion from liability, so that the exception entirely consumed the initial premise:
 In essence, [the pest control company] agrees to re-treat the premises when their services are ineffective, but * * * in no way guarantees its original work. * * * Within the document itself, a warranty is boldly noted and subsequently carved away.
State ex rel. Celebrezze v. Ferraro (1989), 63 Ohio App.3d 168, 171
(quoting trial court decision). The court in Ferraro went on to find:
 * * * [t]he guarantee in question and the notice regarding the continuation of warranty have the effect of lulling the consumer into believing that the services offered * * * are somehow guaranteed when such is not the case. The only remedy of the consumer is a retreatment of the premises. Upon envisioning the worst case scenario, it is possible that even after pest treatment by appellants, the home of a consumer could be thoroughly destroyed by termite damage. Nonetheless, pursuant to appellants' "guarantee," the sole recourse of the consumer would be to request that appellants come and retreat a mass of rotten and useless wood which had formerly comprised the consumer's home. This "guarantee" does not even permit the refund of a consumer's original investment. Such a remedy is clearly inadequate.
The observations and conclusions of the court in Ferraro are all the more applicable in the present case, in light of the extensive history of ineffective retreatment of the Roelles' home by Orkin. A "warranty" which provides that the consumers' only remedy is a repeated reapplication of termiticide, according to previously employed methods which had utterly failed to produce results, totally ignores the objective of the underlying transaction, that is, the elimination of the termite infestation in the consumer's home. Repeated diluvian drenchings of termiticide, as ineffective as they are copious, are of no benefit to the homeowner, and at worst mislead the homeowner into relying on Orkin's treatment in lieu of more effective remedies.
Orkin further argues that, regardless of the merits, any CSPA claim is barred by the applicable two-year statute of limitations found in R.C.1345.10(C): "An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of the suit." The annual renewals entered into by the parties between 1994 and 1999 constituted a continuing contract, and for statute of limitation purposes the action accrued, and statute began to run, only upon termination of the final renewal. See, generally, Weber v. Billman (1956), 165 Ohio St. 431. More appositely, in the case of remedial legislation such as the CSPA, the term "occurrence of the violation," where the violation is a continuing or episodic one, will denote the time when the violation ceases. RY/EH,Inc. v. Arthur Treacher's, Inc. (1996), 115 Ohio App.3d 332 (construing the same phrase "occurrence of the violation" in R.C. 1334.10, providing remedy for victims of deceptive or negligent franchising practices). Statutes of limitation generally are to be construed liberally to permit the decision of cases upon their merits. Gregory v. Flowers (1972),32 Ohio St.2d 48. The restrictive reading of R.C 1345.02 Orkin would have us adopt in the present case essentially guts the statute with respect to continuing transactions, which are common in consumer sales and thus the intended object of the legislation. We therefore find that the Roelles' CSPA action is not barred by the statute of limitations.
We accordingly find that the trial court did not err in granting summary judgment for the Roelles on their claim that Orkin's Retreatment Guarantee constituted an unfair or deceptive act or practice in violation of the CSPA, and that the exclusion against liability for structural damages should be given no effect. Orkin's third and fourth assignments of error are accordingly overruled.
Having concluded that the trial court did not err in finding that Orkin's conduct breached its contractual obligations, and that issuance of the Retreatment Guarantee violated the CSPA, we now turn to both parties' assignments of error addressing the measure of damages in this case.
Orkin's second assignment of error asserts that the trial court improperly attributed all termite damage at the property to Orkin's failure to effectively treat the termite infestation. Orkin's contention is that testimony established the presence of active termites in the property in 1988. Orkin argues that this, in conjunction with Orkin's interpretation of testimony by Keeney to the effect that swarms of reproductive termites do not appear until four to six years after a termite colony appears, establishes that at least some of the termite damage occurred over the course of years prior to the Evecs entering into a contract with Orkin, and is thus not compensable. Orkin correctly points out that a plaintiff bears the burden of proving the extent of his damages and the attribution of proximate cause to the defendant's breach, Akro-Plastics v. Drake Industries (1996), 115 Ohio App.3d 221,226 ("it is axiomatic that every plaintiff bears the burden of proving the nature and extent of his damages in order to be entitled to compensation,") and asserts that the Roelles have not established with sufficient certitude the scope of damages imputable to Orkin.
Initially we note that Orkin somewhat misstates the thrust of Keeney's testimony about the timing of development of swarming reproductive termites in a colony. Keeney testified that it takes four to six years before a new colony will produce swarmers, not that it will take four to six years for an established colony to produce swarmers upon invading a structure. In conjunction with the general description of termite colony development and activity as presented in the case, the trial court could fairly draw the inference that termite damage would commence in a relatively minor form about the time that the Evecs first contacted Orkin, and increase greatly over the course of infestation as the size of the colony and the number of points of attack on the structure increased. Although establishing the chronology of damage inflicted by a termite infestation would of course be problematic, the general timing of events presented by the homeowners, in the present case, supports the trial court's conclusion that compensable damages resulting from the termite infestation after the Evecs entered into the contract with Orkin could reasonably be assimilated to the sum of all termite damage to the home, and that the computed total of repair costs, as presented by the Roelles at trial, was a fair measure of the damages attributable to Orkin. See, e.g., Davidson v. Cherry (Jan. 7, 1985), Butler App. No. CA84-04-051, unreported. We accordingly find no error on the part of the trial court in this respect, and Orkin's second assignment of error is overruled.
Orkin's fifth assignment of error asserts that, if a CSPA violation is found, then the trial court erred in awarding treble damages of $1,767.63 (representing three times the amounts paid by the Roelles for annual renewals of the Retreatment Guarantee) because the Roelles' failed to mitigate their damages. Orkin's argument is that the Roelles could have mitigated their damages by declining to renew the contract when it became apparent that Orkin's treatment was ineffective in ridding the house of termites. In light of the fact that Orkin continued to extend annual contract renewal offers to the Roelles, which they accepted in the plain belief that Orkin would fulfill its obligation of effective termite treatment under the contract, this argument by Orkin is unpersuasive to the point that it merits no further discussion. Orkin's fifth assignment of error is accordingly overruled.
This brings us to consideration of the Roelles' first and second assignments of error, also addressing the computation of damages by the trial court. The Roelles' first assignment of error asserts that the trial court erred when it limited treble damages under the CSPA to three times the amount paid by the Roelles under the Retreatment Guarantee. The Roelles' second assignment of error asserts that the trial court erred in excluding certain "diagnostic expenses," representing costs incurred in ascertaining the extent of damage to the home, which Mr. Roelle's testimony established at $1,569.
The magistrate heard extensive testimony regarding the extent of damage to the home and estimated costs for repairs, as well as prior expenses incurred by the Roelles. In addition to the $1,767.63 in treble damages under the CSPA, the magistrate set total damages of $34,165.76 to cover past and future structural repairs to the home. The magistrate's decision addressed extensive testimony from both sides on this issue, primarily accepting that presented by the Roelles but discounting certain aspects of their expert's testimony, particularly with respect to labor costs. We are again mindful that this is primarily a factual issue, and correspondingly that deference should be given to the trier of fact's assessment of the credibility and the weight of the evidence before him. It was within the province of the trier of fact to discount as unnecessary or duplicative certain expenses claimed by the Roelles, and the record in the present case does not support reversal on this issue. We therefore find no error on the part of the trial court in declining to include the "diagnostic expenses" claimed by the Roelles, and their second assignment of error is accordingly overruled.
In contrast, we find that the trial court did err in limiting treble damages merely to the amounts paid by the Roelles under the retreatment contract. It is apparent in the present case that the extensive structural damage incurred by the home is inextricably intertwined with Orkin's deceptive sales practice under the CSPA in its presentation of the Retreatment Guarantee. The Roelles' damages flow directly from their continued renewal of the contract, and Orkin's corresponding failure to fulfill its obligations in undertaking "necessary treatment" to treat the termite infestation. It was therefore error on the part of the trial court to limit treble damages awardable under the CSPA to amounts paid by the Roelles under the Retreatment Guarantee.
Upon remand, the trial court shall compute treble damages under the CSPA upon the total amount of damages awarded to the Roelles. Based upon the trial court's computations in this respect, which we otherwise leave undisturbed, this would comprise $589.21 in reimbursement for amounts paid under the annual Retreatment Guarantee renewals, and $34,165.76 for past and future structural repairs, for a total of $34,754.97, trebled under the CSPA to give a total award of $104,264.91. The Roelles' first assignment of error is accordingly sustained, and the trial court will upon remand modify damages accordingly.
The Roelles' third assignment of error asserts that the trial court, in addition to finding a violation of the CSPA for unfair or deceptive acts or practices as defined in R.C. 1345.02, should have found that Orkin's "inefficient and incompetent conduct" in failing to eradicate the termite infestation should be found an unconscionable act or practice in violation of R.C. 1345.03(A), providing as follows:
 (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 (B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
 (1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interests because of his physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;
 (2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;
 (3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;
 (4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;
 (5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;
 (6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment;
 (7) Whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy.
The Roelles advance no authority on appeal for the proposition that mere incompetence or ineffectiveness, of themselves, constitute an unconscionable act or practice under the CSPA. Moreover, on the present facts, Orkin's ineffectiveness in treating the Roelle home is an integral part of the claimed violation of R.C. 1345.02 for a deceptive sales practice. Without the ineffectual treatment, the Roelles would have suffered no damages from the deceptive sales practice; without the deceptive sales practice, the ineffectiveness of the treatment would of itself not be actionable under the terms of the contract. We therefore find that the trial court did not err in declining to find a separate violation of the CSPA based solely upon Orkin's "inefficiency and incompetence." The Roelles' third assignment of error is accordingly overruled.
The Roelles' fourth assignment of error asserts that the trial court should have found that Orkin had breached an implied warranty that it would eradicate termites at the Evec/Roelle residence. Since we have already determined that Orkin breached the express terms of its contract when it failed to "apply any necessary additional treatment to [the] structure if any infestation of subterranean termites is found during the effective period of [the] Guarantee," it is unnecessary to search for any implied warranty on the present facts. The Roelles' fourth assignment of error is accordingly overruled.
Lastly, we turn to the issue of attorney fees, raised by the Roelles' fifth assignment of error and Orkin's sixth assignment of error. Orkin asserts that the trial court erred in awarding any attorney fees at all; the Roelles assert to the contrary that the trial court erred in the amount of attorney fees it awarded.
The CSPA provides for an award of attorney fees to a prevailing party under certain conditions:
 The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:
 (1) The consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith;
 (2) The supplier has knowingly committed an act or practice that violates this chapter.
R.C. 1345.09(F).
Orkin asserts that, if a CSPA violation is found, Orkin cannot be found to have "knowingly committed an act or practice that violates" the CSPA. We disagree. Celebrezze v. Ferraro, supra, was decided in 1989. Orkin continued to offer and reissue the Retreatment Guarantee to the Evecs, and subsequently the Roelles, up to the time of trial. Under the circumstances, a knowing violation of the CSPA is established, and an award of fees was appropriate.
With respect to the amount of attorney fees, the trial court held a hearing at which counsel for the Roelles presented evidence of hours expended on the case and their typical hourly rate. An experienced local trial attorney testified in support of the fees presented. Furthermore, counsel for Orkin stipulated to both the reasonableness of the hourly rate and the amount of preparation time expended on the case by counsel for the Roelles. The magistrate awarded only $9,027.20 of the total $32,359.50 in requested fees, however, finding that the bulk of attorney time expended for the Roelles did not relate to the breach of contract claim, upon which the trial court had found in favor of the Roelles, but to the CSPA claim, for which the trial court had awarded only moderate damages. Without passing, ab initio, on whether it was reasonable for the trial court to reduce attorney fees on this basis since the plaintiffs in fact prevailed on at least part of their CSPA claims, our reasoning leading to reversal on the issue of CSPA treble damages obviates this rationale for reducing attorney fees. Since the reasonableness of attorney fees claimed was otherwise supported by the evidence presented at the hearing, upon remand the trial court shall award fees in the amount originally requested by counsel for the Roelles. We further find that, due to the complex and colorable, if not ultimately meritorious, issues raised by Orkin upon appeal, this court will not entertain any App.R. 23 motion for fees, nor shall the trial court award upon remand any fees incurred in connection with this appeal.
In accordance with the foregoing, Orkin's sixth assignment of error is overruled, and the Roelles' fifth assignment of error is sustained.
In summary, Orkin's first, second, third, fourth, fifth, and sixth assignments of error are overruled. The Roelles' first and fifth assignments of error are sustained, and second, third and fourth assignments of error are overruled. The matter will be remanded to the trial court for an entry granting increased damages and attorney fees as set forth in this opinion.
 _____________________ DESHLER, J.
BRYANT and KENNEDY, JJ., concur.